UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARK LAW GROUP, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>ARCH INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. C22-0504JLR<br><br>ORDER |

## I.   INTRODUCTION

Before the court is Defendant Arch Insurance Company's ("Arch") motion to bifurcate and stay discovery of Plaintiffs Ark Law Group ("Ark") and Nadia Kourehdar's (collectively, "Plaintiffs") extra-contractual claims. (Mot. (Dkt. # 15); Reply (Dkt. # 19).) Plaintiffs oppose the motion. (Resp. (Dkt. # 17).) The court has considered the

//

//

//

ORDER - 1

submissions of the parties, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES Arch's motion.

## II. BACKGROUND

This case involves a malpractice insurance coverage dispute between Plaintiffs[2] and Arch. (*See generally* Compl. (Dkt. # 1-2).) On February 21, 2018, Arch issued Ark a "Lawyers Professional Liability Policy" (the "Policy"), Policy Number 11LPL12622301. (*See* 7/7/22 Ries Decl. (Dkt. # 16) ¶ 2, Ex. 1 ("Policy").) The Policy contains a coverage section and insuring agreement related to "Legal Services," with a limit of liability totaling $1,000,000 per claim and a deductible totaling $15,000 per claim. (Policy at Ark_CF_000814.) The "Legal Services" section of the Policy provides coverage for a "Claim . . . based on an alleged negligent act, error or omission in the Insured's rendering or failing to render Legal Services for others."[3] (*Id.* at Ark_CF_000819.)

//

---

[1] Neither party has properly requested oral argument (*see* Mot. at 1; Resp. at 1), and the court has determined that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] While Ark has since dissolved, at all times relevant to this case, Ms. Kourehdar appears to have been Ark's managing attorney and only member/owner. (*See* SC Resp. (Dkt. # 7) at 4-6; 4/21/22 Ries Decl. (Dkt. # 8) ¶¶ 10-15, Exs. 8-13.)

[3] The Policy also contains a "Disciplinary Proceedings" section, which states, in relevant part, that Arch "will reimburse the Insured for defense costs incurred by the Insured to defend Disciplinary Proceedings." (*See* Policy at Ark_CF_000820; *see also id.* at Ark_CF_000814 (providing a sub-limit of liability totaling $25,000 for each Disciplinary Proceeding).) The Policy defines Disciplinary Proceedings as "a grievance or allegation involving an act or omission made against an Insured to any professional entity charged with the responsibility to oversee lawyer disciplinary matters." (*Id.* at Ark_CF_000831.)

In the summer of 2018, Plaintiffs fired one of their employees, Nathan Clark. Following his termination, Mr. Clark filed both a bar complaint against Ms. Kourehdar with the Washington State Bar Association (the "Bar Complaint") and a lawsuit against Plaintiffs in King County Superior Court (the "Clark Complaint"). (*See* Compl. ¶¶ 5.3-5.4.) The Bar Complaint alleged, among other things, that Ms. Kourehdar negligently handled Ark's clients. (*Id.*; *see* 4/21/22 Ries Decl., Ex. 13 (Stipulation to Reprimand filed by the Disciplinary Board of the Washington State Bar Association).) And while the Clark Complaint sought damages for discrimination, retaliation, wrongful termination, and emotional distress arising out of discrimination, the fact section of the Clark Complaint also included allegations regarding Plaintiffs' negligent handling of Ark's clients. (Compl. ¶¶ 5.3-5.4; *see* 7/7/22 Ries Decl. ¶ 4, Ex. 3 ("Clark Complaint") (filed July 18, 2018).)

On August 8, 2018, Plaintiffs forwarded the Clark Complaint and Bar Complaint to Arch and requested coverage for the claims under the Policy. (*See* 7/7/22 Ries Decl. ¶ 3, Ex. 2 (August 8, 2018 email); Compl. ¶¶ 5.5-5.6.) The next day, a representative of Arch allegedly called Plaintiffs and informed them that Arch "would provide coverage for defense of the Bar [C]omplaint" but "denied coverage as to the [Clark Complaint] and would not provide Plaintiff[s] with a defense." (Compl. ¶ 5.8; *see also id.* at (stating that, despite having already called to deny coverage for the Clark Compliant, Arch sent Plaintiffs a letter on August 10, 2018, formally confirming receipt of Plaintiffs' claim and informing them that Arch would investigate the claims).) On August 15, 2018, Arch sent Plaintiffs a letter reaffirming its denial of coverage as to the Clark Complaint. (*See id.*

1  ¶ 5.11; 7/7/22 Ries Decl. ¶ 5, Ex. 4 (August 15, 2018 letter).)  In the letter, Arch stated

2  that the Clark Complaint did "not allege any 'negligent act, error, or omission in the

3  Insured's rendering or failing to render Legal Services, for others,'" but rather, Mr.

4  Clark's allegations arose "out of Ark's alleged wrongful termination of [Mr.] Clark" as

5  one of Ark's legal assistants.  (7/7/22 Ries Decl., Ex. 4 at Ark_CF_000056 (emphasis

6  omitted) (quoting Policy at Ark_CF_000814).)  In sum, Arch took the position that the

7  allegations and requested damages in the Clark Complaint were for wrongful termination

8  and not legal malpractice such that coverage was not available under the "Legal

9  Services" coverage section of the Policy.  (*Id.*)

10        As a result of Arch's refusal to defend or indemnify Plaintiffs, Ms. Kourehdar

11  alleges that she had to close Ark in order to defend herself and Ark against Mr. Clark's

12  lawsuit.  (*See* Compl. ¶ 5.13.)  "After litigating for over a year, she was finally able to

13  reach a settlement agreement with Mr. Clark in July 2019."  (*Id.*)  Plaintiffs subsequently

14  obtained counsel to represent them for "claims arising out of a June 5, 2018 professional

15  liability covered loss."  (Gebril Decl. (Dkt. # 18) ¶ 7, Ex. 6 (November 16, 2021 letter);

16  *compare* Compl. ¶¶ 5.15-5.17 (alleging that Plaintiffs' counsel sent numerous

17  Policy/claim-related document requests to Arch, which it did not timely respond to), *with*

18  7/22/22 Ries Decl. (Dkt. # 20) ¶¶ 3-4, Ex. 2 (alleging that Arch did timely respond to

19  Plaintiffs' request for documents, but its response was inadvertently sent to Plaintiffs'

20  counsel at an incorrect email address, and that Arch later corrected the email address and

21  resent the documents).)

22  //

ORDER - 4

1    In February 2022, Plaintiffs filed a complaint against Arch with the Washington
2  State Office of the Insurance Commissioner for violations of the Insurance Fair Conduct
3  Act ("IFCA"), RCW 48.30.015. (*See* Compl. ¶ 5.18; Gebril Decl. ¶ 8, Ex. 7 ("IFCA
4  Complaint").) Arch responded by maintaining its original denial of coverage as to the
5  Clark Complaint. (*See* Compl. ¶¶ 5.19-5.20; Gebril Decl. ¶ 9, Ex. 8 ("Arch IFCA Resp.
6  Letter") at 1-2.) Plaintiffs then filed this lawsuit against Arch in King County Superior
7  Court on March 11, 2022, asserting claims for: (1) breach of contract; (2) violations of
8  the Washington Consumer Protection Act ("WCPA"), RCW 19.86 et seq.; (3) bad faith;
9  and (4) violations of the IFCA.[4] (*See* Compl. at 5-8.) Arch removed the case to this
10 court on April 15, 2022. (*See* NOR (Dkt. # 1).)

11   Arch now asks the court to bifurcate Plaintiffs' contractual claim from their
12 extra-contractual claims—i.e., their bad faith, CPA, and IFCA claims. (Mot. at 1-2.)
13 Arch further seeks to stay discovery on the extra-contractual claims until the court
14 decides "whether Plaintiffs are entitled to coverage [for the Clark Complaint] under the
15 terms and conditions" of the Policy. (*Id.*) Arch argues that bifurcation and a stay of
16 discovery would preserve the parties' resources and promote judicial economy because
17 "if, in connection with Plaintiffs' breach of contract claim, the [c]ourt determines that
18 there is no coverage available for the Clark Complaint under the Policy, then there is no
19 //

20

---

[4] Arch's handling of the Bar Complaint does not form the basis of this action because Arch did provide a defense to that complaint, up to the Policy limits. (*See* Arch IFCA Resp. Letter at 2; *see generally* Compl.)

basis for Plaintiffs' extra-contractual causes of action, and they are moot." (*See generally id.* at 8-9.)

Plaintiffs argue that this "is simply a misstatement of the law and allegations in this case." (Resp. at 5 (citing Mot. at 8).) Plaintiffs contend that bifurcation is not justified because: (1) Plaintiffs' breach of contract claim is not dispositive of their extra-contractual claims and thus bifurcation would result in two trials regardless of whether Plaintiffs succeed on their breach of contract claim; and (2) "there is substantial overlap between Plaintiffs' [extra-contractual] claims and the breach of contract claim making bifurcation inefficient and a waste of resources." (*See id.* at 5-8; *see also id.* at 10 (stating that Arch failed to allege that it would be prejudiced by trying all of Plaintiffs' claims together).) For the same reasons, Plaintiffs argue that a stay of discovery as to their extra-contractual claims would be inefficient and "would merely allow Arch to delay the ultimate resolution of this case while substantially prejudicing Ms. Kourehdar's ability to hold her former insurer accountable for its bad faith denial of her defense." (*See id.* at 9.)

In its reply, Arch concedes that "Plaintiffs' extra-contractual claims could remain viable even in the absence of insurance coverage," but argues that bifurcation and a stay of discovery is still warranted to economize the case; preserve the resources of the parties and the court; and to prevent prejudice to Arch and avoid jury confusion. (*See* Reply at 4-6 (arguing, for the first time, that "the jury will be confused, as well as unduly and unfairly influenced, to Arch's detriment, if it hears testimony and allegations from

//

Plaintiffs regarding both claims at the same time"); *see also id.* at 6-7 (discussing the interests of judicial economy and preservation of resources).)

### III.   ANALYSIS

Motions to bifurcate are granted or denied in the sound discretion of the trial court. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). A district court's authority to bifurcate comes from Federal Rule of Civil Procedure 42(b), which states:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). In deciding a motion to bifurcate, courts consider factors such as convenience, prejudice, judicial economy and whether the issues are clearly separable. *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2008 WL 2074401, at *1 (N.D. Cal. May 15, 2008). The party seeking bifurcation "has the burden of proving that bifurcation is justified given the facts in [the] case." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992).

Bifurcation is the exception rather than the rule. *Hangarter*, 373 F.3d at 1021. If a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties. *See Allstate Ins. Co. v. Breeden*, 410 F. App'x 6, 9 (9th Cir. 2010); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001); *see also*

*Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982) (noting that bifurcation may be appropriate where the evidence necessary to prove one claim poses a significant threat of confusing or prejudicing the jury as it considers other claims). However, "[w]here an overlap of factual issues exists between the claims, courts are reluctant to bifurcate the proceedings." *Dees v. Allstate*, No. C12-04823JLR, 2012 WL 3877708, at *1 (W.D. Wash. 2012) (citing *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861, 871 (7th Cir. 1994)). Indeed, if the preliminary and separate trial of an issue would involve extensive proof and substantially the same facts or witnesses as the other issues in the cases, or if any economy in time and expense is wholly speculative, the motion should be denied. *See Datel Holdings LTD. v. Microsoft Corp.*, No. C-09-05535 EDL, 2010 WL 3910344, at *2-5 (N.D. Cal. Oct. 4, 2010); *Dees*, 2012 WL 3877708, at *1. The Ninth Circuit has stated that a district court's decision declining to bifurcate comports with "normal trial procedure." *Hangarter*, 373 F.3d at 1021.

"Numerous courts have recognized substantial overlap between the issues of coverage and bad faith, such that bifurcation of the issues would be inappropriate." *Dees*, 2012 WL 3877708, at *2. In addition, this court regularly hears insurance cases that involve both breach of contract claims and extra-contractual claims regarding the insurer's failure to follow insurance regulations or act in good faith. *See, e.g., id.*, at *1-2 (denying motion to bifurcate and stay discovery in a case involving underinsured motorist claims and extra-contractual claims); *Bates v. State Farm Mut. Auto. Ins. Co.*, No. C14-1557JLR, 2015 WL 11777838, at *1 (W.D. Wash. May 18, 2015) (same); *Campbell v. Metro. Prop. & Cas. Ins. Co.*, No. C09-1611RAJ, 2010 WL 11684459, at *3 (W.D.

Wash. July 19, 2010) (same); *see also, e.g., Allstate Indem. Co. v. Lindquist*, No. C20-1508JLR, 2022 WL 2357007 (W.D. Wash. June 30, 2022); *United States Fid. & Guar. Co. v. Ulbricht*, No. C20-0369JLR, 2022 WL 110457 (W.D. Wash. Jan. 12, 2022). Nothing in the complaint or the motion to bifurcate compels the court to treat this case any differently.

As Plaintiffs correctly argue, the issue of coverage under the Policy is not necessarily dispositive of Plaintiffs' extra-contractual claims. (*See, e.g.*, Resp. at 5-8 (discussing relevant case law)); *Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505JCC, 2013 WL 1499265, at *10 (W.D. Wash. Apr. 11, 2013) ("Washington courts have repeatedly permitted bad faith actions to proceed absent a successful contract claim." (collecting cases)); *Campbell*, 2010 WL 11684459, at *2 (stating that "[i]nsurers can act in bad faith even where they properly deny coverage or compensation to their insureds" and "violations of many of Washington's insurance regulations are bad faith regardless of claim denial"); *Navigators Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. C12-0013MJP, 2013 WL 2155707, at *1 (W.D. Wash. May 16, 2013) ("[E]ven if National Union defeats the claim for contribution/coverage, the extracontractual issues relating to the investigation and handling of the insured's claim for indemnity still exist."). Thus, even if Arch's motion was granted, the court would be faced with two trials, not one. For that reason, and because of the significant factual overlap between Plaintiffs' contractual and extra-contractual claims, bifurcation is not likely to make the resolution of this matter more economical or more expedient. *See, e.g., Dees*, 2012 WL 3877708, at *1-2. Additionally, bifurcation is decidedly less

convenient for the parties and the court. Finally, the court finds that bifurcation is not necessary to avoid jury confusion and prejudice to Arch, and indeed that Plaintiffs are likely to suffer prejudice if the court were to bifurcate this case. *See, e.g.*, *Campbell*, 2010 WL 11684459, at *3. For all of these reasons, the court concludes that Arch has not met its burden to demonstrate that bifurcation and a stay of discovery is more appropriate than "normal trial procedure," *Hangarter*, 373 F.3d at 1021, and declines to bifurcate trial or discovery in this matter.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Arch's motion to bifurcate and stay discovery of Plaintiffs' extra-contractual claims (Dkt. # 15).

Dated this 25th day of July, 2022.

JAMES L. ROBART
United States District Judge